C. D. LULLING et al., Plaintiffs,

v.

BARNABY'S FAMILY INNS, INC. et al., Defendants.

Civ. A. Nos. 79-C-308 to 79-C-313.

United States District Court, E. D. Wisconsin.

Oct. 20, 1980.

See also D.C., 87 F.R.D. 720; D.C., 482 F.Supp. 318.

Jack D. Moertl and Terry L. Campbell, Milwaukee, Wis., for plaintiffs.

Irvin B. Charne and Howard A. Pollack of Charne, Glassner, Tehan, Clancy & Taitelman, Milwaukee, Wis., and James R. Sneider of Sneider & Troy, Chicago, Ill., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

REYNOLDS, Chief Judge.

At the conclusion of a three–week trial and after considering all of the evidence, the briefs, arguments of counsel, the parties' proposed findings of fact and conclusions of law, and the necessity for a speedy decision, the Court announced in its decision from the bench that it was persuaded that judgment should be entered in favor of the defendants on all of the plaintiffs' claims and on the defendants' counterclaims. The Court indicated that its decision would be followed by the filing of its findings of fact and conclusions of law, and this is being done now with this document. With the exception of a few modifications, the Court has adopted the proposed findings of fact and conclusions of law submitted by the defendants.

### FINDINGS OF FACT

1. The parties to these consolidated actions consist of six groups of plaintiffs and one group of defendants. The six groups of plaintiffs are:

(a) SDL of Waunakee, Inc., a Wisconsin corporation located at 4802 East Washington Avenue, Madison, Wisconsin; and C. D. Lulling and Susan Lulling who are the corporation's principals and reside at Route 2, Waunakee, Wisconsin.

(b) Kent's Family Inn, Inc., a Wisconsin corporation located at 7259 North 76th Street, Milwaukee, Wisconsin; and Kent Mieding and Susan Mieding who are the corporation's principals and reside at 552 West Fransee Lane, Glendale, Wisconsin.

(c) Port Washington Road, Inc., a Wisconsin corporation located at 5201 North Port Washington Road, Glendale, Wisconsin; and Thomas G. Meyer and Sue A. Meyer who are the corporation's principals and reside at 2512 Margaretta Court, Glendale, Wisconsin.

(d) Harry's of 27th Street, Inc., a Wisconsin corporation located at 4854 South 27th Street, Milwaukee, Wisconsin; and Harry C. Nickell and Dianna L. Nickell who are the corporation's principals and reside at 485 East Oak View Lane, South Milwaukee, Wisconsin.

(e) Chamberlain's Inn, Inc., a Wisconsin corporation located at 6613 West Mineral Point Road, Madison, Wisconsin; and Michael Jo Chamberlain and Christine M. Chamberlain who are the corporation's principals and reside at 2702 Badger Lane, Madison, Wisconsin.

(f) Chump on Capitol Drive, Inc., a Wisconsin corporation located at 8501 West Capitol Drive, Milwaukee, Wisconsin; and Gene M. McKiernan and Valerie J. McKiernan who are the corporation's principals and reside at 8873 West Potomac Avenue, Milwaukee, Wisconsin.

The following are the defendants:

(g) Barnaby's Family Inns, Inc. ("Barnaby's"), an Illinois corporation headquartered at 2832 West Touhy Avenue, Chicago, Illinois.

(h) Angelo G. Geocaris who is chairman of the board and president of Barnaby's.

(i) Frank Pope who was executive vice president and chief operating officer of Barnaby's until May 1978.

(j) Burton E. Evans who was treasurer and chief financial officer of Barnaby's from June 1972 until March 1978.

(k) Daniel R. Mass who was director of marketing and later a vice president of Barnaby's from February 1977 through December 1979.

2. Each of the six groups of plaintiffs filed a claim against all of the defendants, and the defendant Barnaby's filed a counterclaim against each group of plaintiffs.

3. At the conclusion of the plaintiffs' case in chief, the parties by stipulation dismissed the defendant Daniel R. Mass from the action.

4. During the middle and late 1960's, Barnaby's developed the trademarks, service marks, and methods of operation under which the Barnaby's chain of restaurants have been operated. By 1977, 26 restaurants operating in Illinois, Wisconsin, Missouri, Indiana, Virginia, and Florida were part of Barnaby's chain. Of these 26 restaurants, 13 were company owned and 13 were franchises. The 6 Barnaby's restaurants located in Wisconsin were then company–owned restaurants. This case concerns these 6 Wisconsin restaurants.

5. In December of 1976, Angelo Geocaris and Thomas Meyer visited each of the Barnaby's Wisconsin restaurants to interview the managers and evaluate their qualifications as potential franchisees.

6. By early 1977, Barnaby's decided to sell its company–owned restaurants and convert them to franchise operations. Because it desired to maintain the high standard of quality at the restaurants, Barnaby's decided it would offer to sell these restaurants to selected employees of the company. For this reason Barnaby's offered to sell the Wisconsin restaurants to the male plaintiffs, four of whom were managers of the restaurants, one of whom was an assistant manager, and one of whom was the company's area supervisor for the six Wisconsin restaurants.

7. To determine the sale price for each existing restaurant and franchise, Barnaby's applied a multiple of slightly more than three to each restaurant's pre–tax 1976 profits, adjusted to portray pre–tax profits of a franchise operation instead of a company owned operation. For example, in 1976 the company owned restaurant at East Washington Avenue in Madison reported a pre–tax profit of approximately $46,000. To this figure Barnaby's added back approximately $37,000 in expenses that would not have been incurred by a separately owned franchise operation, and it subtracted approximately $24,000 of expenses that would have been incurred had the restaurant operated as a franchise paying Barnaby's standard 5% royalty and had it been paying real estate rent equal to 7% of gross sales. With these adjustments Barnaby's estimated that if this restaurant had been a Barnaby's franchise in 1976, it would have had a pre–tax profit of approximately $59,-000. To this adjusted pre–tax profit, Barnaby's applied the multiplier of approximately three, and, accordingly, the selling price for the restaurant and franchise was determined to be $180,000.

8. Using this same method, the selling price for which each Wisconsin restaurant and franchise was set is as follows:

(a) East Washington (SDL of Waunakee, Inc.) – $180,000

(b) 76th Street (Kent's Family Inn, Inc.) – $210,000

(c) Glendale (Port Washington Road, Inc.) – $195,000

(d) 27th Street (Harry's of 27th Street, Inc.) – $300,000

(e) Mineral Point (Chamberlain's Inn, Inc.) – $110,000

(f) Capitol Drive (Chump on Capitol Drive, Inc.) – $90,000

9. Since the employee–purchasers did not have the financial resources to pay the total purchase price outright, Barnaby's structured the transactions so that the purchase price would be paid over a five to ten–year time period. Moreover, Barnaby's

arranged a $10,000 loan from a Chicago bank for each employee–purchaser, the loan to be used for working capital.

10. The purchase price of each restaurant was partly allocated to the purchase of the franchise and the equipment. The remainder of the purchase price was to be paid off as additional royalty fees. This was done to make the purchase installments tax deductible to the greatest extent possible.[1] The allocation of the purchase price of the East Washington Avenue restaurant in Madison illustrates how this was done. All Barnaby's franchises were required to pay a one–time, front–end franchise fee of $20,000. As a result, $20,000 of the $180,000 purchase price of the East Washington Avenue restaurant had to be allocated to the franchise fee. However, instead of paying the $20,000 fee outright, the fee plus interest was to be paid off in fifty–eight installments of $425 per month. Of the remaining $160,000 of the purchase price, $70,000 was arbitrarily allocated to the purchase of the restaurant's equipment under a lease–purchase contract. The contract called for lease payments, including interest, of $1,162.09 per month for eighty–five months. The remaining $90,000 of the purchase price was to be paid off in the form of monthly royalties. Barnaby's franchisees are required to pay monthly royalties of 5% of gross sales for the right to operate as Barnaby's franchisees. Therefore, to pay off the $90,000 remainder of the purchase price on the East Washington Avenue restaurant, an additional monthly royalty of 4.1% of gross sales was to be paid for the first seven years of this franchise, after which time the normal 5% royalty would apply for the remainder of the twenty year life of the franchisee and for the ten year renewal period.

11. All the Wisconsin purchases were to be handled in a similar fashion. All were to be paid off in installments over a period of from five to ten years, and none allocated any portion of the installment payments to such nondeductible items as good will. In-stead, large portions of the payments were earmarked as equipment lease payments and royalties in order that they would be tax deductible.[2]

12. In March of 1977, each of the male plaintiffs, except Gene McKiernan, individually met in Chicago with Frank Pope and Thomas Meyer, at which time Pope offered to sell to each plaintiff one of Barnaby's Wisconsin restaurant businesses and a franchise for operation of the restaurant.

13. In April of 1977, Gene McKiernan also met with Frank Pope and Thomas Meyer in Chicago, at which time Pope also offered to sell him one of Barnaby's Wisconsin restaurant businesses and a franchise for operation of the restaurant.

14. Each offer required the purchaser to pay off the purchase price in the manner outlined above and to enter into a real estate lease requiring the lessee to make property tax payments along with monthly lease or sublease payments in an amount approximately equalling 7% of the 1976 gross sales and an additional percentage rental if sales increased.

15. At the initial meeting between Pope and Meyer and each of the individual male plaintiffs, the terms of each offer were explained. Each male plaintiff was shown a computer printout of the 1976 profit and loss statement, a proforma profit and loss statement based on the 1976 operating results, and a proforma statement estimating sales, expenses, profits, and cash flow for the years 1977–1981 for the restaurant being offered. At each initial meeting these financial statements were reviewed line by line, and each male plaintiff was told how the proforma profit and loss statement, based on the 1976 operating results, was prepared.

16. The proforma financial statements were prepared by Angelo Geocaris, Frank Pope, and Burton Evans based on the 1976 financial statements for the respective restaurants but with changes which, as Pope

---

1. The allocation of the purchase price did not include an allocation to nondeductible items such as good will or going concern value. Ac-cordingly, the Court expresses no opinion as to the deductibility of the purchase installments.

2. See note 1, supra, and accompanying test.

told each male plaintiff, were made to portray a franchise operation. Each male plaintiff was told that the royalty, equipment lease, and franchise fee expenses required to be paid under the offer were added in the proforma statement to the expenses actually incurred by the restaurant in 1976. Each was also told that the real estate rental charges required under the offer were substituted for the rental expenses reflected in the 1976 profit and loss statement. In addition, it was explained to each that the proforma statement did not reflect (1) any bonuses paid in 1976, (2) $1,200 of the salary of a handyman–employee of Barnaby's, which amount was allocated to the restaurant in 1976, (3) the portion of professional fees expense exceeding $2,400 which Barnaby's allocated to the restaurant in 1976, (4) the portion of the marketing expense exceeding 2% of gross sales allocated to the restaurant in 1976, or (5) the equipment rental charge made by Barnaby's to the restaurant on the restaurant's 1976 profit and loss statements. Each was also told that in the summary profit and loss statement, a large year–end allocation made to the restaurant's accounting expense account in 1974 and 1975, but which had not been incurred at the restaurant, was eliminated.

17. Barnaby's reasons for making these adjustments were also explained. Part of the handyman's salary, which had been allocated in the past to the restaurant, was eliminated from the proforma statement because the handyman had worked out of Barnaby's headquarters. Similarly, Barnaby's overhead expenses, including accounting and professional expenses, were eliminated from the proforma statements, and in their place Barnaby's included an allowance for bookkeeping services of $2,400 per year. Instead of including the marketing expenses allocated to the restaurant in 1976, the proforma statements reflected marketing expenses equal to 2% of gross sales, which percentage equalled the marketing expenses which all the franchises were targeted to spend under the terms of the franchise agreement. Bonuses were eliminated from the proforma statements for the reason that each purchaser–employee would

become in fact an owner–operator, though $13,000 was included in the proforma statement for the owner–operator's salary. Finally, the equipment rental charge allocated to each restaurant in 1976 was eliminated since this equipment was included in the purchase price of each restaurant.

18. Each of the male plaintiffs was told that the offer to purchase a franchise and restaurant was a valuable business opportunity, but each was warned that the operations would be tight because the deal required no cash down, that they would be required to work hard for several years, and that they would be required to keep within the budgeted expenses.

19. At the conclusion of the conference with each male plaintiff, each was told to have an accountant and attorney review the profit and loss statement and proforma statement and to telephone back his decision concerning the offer. Each did seek professional advice, and ultimately each did accept the offer. Following the individual conference, several additional meetings were held, and the various contracts to be signed by the parties were given to the plaintiffs for their review. The plaintiffs were also given an Illinois franchise offering circular which Barnaby's was required to give each prospective franchisee pursuant to its registration of the franchise offers under Illinois law. Barnaby's did not then give the plaintiffs a Wisconsin franchise prospectus or then register the franchise sales in Wisconsin because it believed that Illinois, not Wisconsin, law applied. Nonetheless, both the Illinois and Wisconsin franchise statements are similar in form and content.

20. On or before May 1, 1977, SDL of Waunakee, Inc., in order to purchase from Barnaby's its existing restaurant located at 4802 East Washington Avenue, Madison, Wisconsin, lease the real estate, and acquire the right to operate as a Barnaby's franchisee, entered into four contracts with Barnaby's, which contracts, as signed, required SDL of Waunakee, Inc., to make the following payments on a monthly basis:

(a) Fixed rental payments of $2,583.33 per month;

(b) Percentage rental payments equal to the amount, if any, by which 7% of the restaurant's gross sales exceeds the fixed rental payments;

(c) Real estate taxes and assessments;

(d) Franchise fee installment payments of $424.95 per month for fifty–eight consecutive months;

(e) Franchise royalty payments of 9.1% of gross sales for the first seven years, and 5% of gross sales for the remainder of the life of the franchise; and

(f) Equipment lease payments of $1,162.09 per month for eighty–five consecutive months.

C. D. Lulling and Susan Lulling guaranteed the performance of SDL of Waunakee, Inc., under the contracts.

21. On or before May 1, 1977, Kent's Family Inn, Inc., in order to purchase from Barnaby's the existing restaurant located at 7259 North 76th Street, Milwaukee, Wisconsin, lease the real estate, and acquire the right to operate as a Barnaby's franchisee, entered into four contracts with Barnaby's, which contracts, as signed, required Kent's Family Inn, Inc., to make the following payments on a monthly basis:

(a) Fixed rental payments of $2,616.66 per month;

(b) Percentage rental payments equal to the amount, if any, by which 7% of the restaurant's gross sales exceeds the fixed rental payments;

(c) Real estate taxes and assessments;

(d) Franchise fee installment payments of $424.95 per month for fifty–eight consecutive months;

(e) Franchise royalty payments of 9.9% of gross sales for the first seven years, and 5% of gross sales for the remainder of the life of the franchise; and

(f) Equipment lease payments of $1,162.09 per month for eighty–five consecutive months.

Kent Mieding and Judith Mieding guaranteed the performance of Kent's Family Inn, Inc., under the contracts.

22. On or before May 1, 1977, Port Washington Road, Inc., in order to purchase from Barnaby's its existing restaurant located at 5201 North Port Washington Road, Glendale, Wisconsin, lease the real estate, and acquire the right to operate as a Barnaby's franchisee, entered into four contracts with Barnaby's, which contracts, as signed, required Port Washington Road, Inc., to make the following payments on a monthly basis:

(a) Fixed rental payments of $2,583.33 per month;

(b) Percentage rental payments equal to the amount, if any, by which 7% of the restaurant's gross sales exceeds the fixed rental payments;

(c) Real estate taxes and assessments;

(d) Franchise fee installment payments of $424.95 per month for fifty–eight consecutive months;

(e) Franchise royalty payments of 9% of gross sales for the first seven years, and 5% of gross sales for the remainder of the life of the franchise; and

(f) Equipment lease payments of $1,162.09 per month for eighty–five consecutive months.

Thomas Meyer and Sue Meyer guaranteed the performance of Port Washington Road, Inc., under the contracts.

23. On or before May 1, 1977, Harry's of 27th Street, Inc., in order to purchase from Barnaby's its existing restaurant located at 4854 South 27th Street, Milwaukee, Wisconsin, lease the real estate, and acquire the right to operate as a Barnaby's franchisee, entered into four contracts with Barnaby's, which contracts, as signed, required Harry's of 27th Street, Inc., to make the following payments on a monthly basis:

(a) Fixed rental payments of $2,916.66 per month;

(b) Percentage rental payments equal to the amount, if any, by which 7% of the restaurant's gross sales exceeds the fixed rental payments;

(c) Real estate taxes and assessments;

(d) Franchise fee installment payments of $424.95 per month for fifty–eight consecutive months;

(e) Franchise royalty payments of 14% of gross sales for the first six years, and 5% of gross sales for the remainder of the life of the franchise; and

(f) Equipment lease payments of $1,162.09 per month for eighty–five consecutive months.

Harry Nickell and Diana Nickell guaranteed the performance of Harry's on 27th Street, Inc., under the contracts.

24. On or before May 1, 1977, Chamberlain's Inn, Inc., in order to purchase from Barnaby's its existing restaurant located at 6613 Mineral Point Road, Madison, Wisconsin, lease the real estate, and acquire the right to operate as a Barnaby's franchisee, entered into four contracts with Barnaby's, which contracts, as signed, required Chamberlain's Inn, Inc., to make the following payments on a monthly basis:

(a) Fixed rental payments of $2,483.33 per month;

(b) Percentage rental payments equal to the amount, if any, by which 7% of the restaurant's gross sales exceeds the fixed rental payments;

(c) Real estate taxes and assessments;

(d) Franchise fee installment payments of $303.49 per month for 94 consecutive months;

(e) Franchise royalty payments of 6% of gross sales for the first six years, and 5% of gross sales for the remainder of the life of the franchise; and

(f) Equipment lease payments of $925.06 per month for 121 consecutive months.

Michael Chamberlain and Christine Chamberlain guaranteed the performance of Chamberlain's Inn, Inc., under the contracts.

25. On or before May 1, 1977, Chump on Capitol Drive, Inc., in order to purchase from Barnaby's its existing restaurant located at 8501 Capitol Drive, Milwaukee, Wisconsin, lease the real estate, and acquire the right to operate as a Barnaby's franchisee, entered into four contracts with Barnaby's, which contracts, as signed, required Chump on Capitol Drive, Inc., to make the following payments on a monthly basis:

(a) Fixed rental payments of $2,458.33 per month;

(b) Percentage rental payments equal to the amount, if any, by which 7% of the restaurant's gross sales exceeds the fixed rental payments;

(c) Real estate taxes and assessments;

(d) Franchise fee installment payments of $303.49 per month for 94 consecutive months;

(e) Franchise royalty payments of 5% of gross sales for the life of the franchise; and

(f) Equipment lease payments of $925.06 per month for 121 consecutive months.

Gene McKiernan and Valerie McKiernan guaranteed the performance of Chump on Capitol Drive, Inc., under the contracts.

26. On May 1, 1977, the sale of the six restaurants took effect and each male plaintiff ceased being an employee of Barnaby's and became a principal of the owner–franchisee of one of the restaurants. Over the last three years, the plaintiffs have been in charge of operating the restaurants.

27. In early 1979, Barnaby's, after negotiations with the Wisconsin Commissioner of Securities, registered the franchises in Wisconsin, and due to its prior failure to register, Barnaby's was required to extend to each plaintiff the option to rescind the franchise purchase. On February 23, 1979, Barnaby's attorney mailed each group of plaintiffs a notice giving a 30–day option to rescind the franchise purchase. A second notice of the 30–day option was mailed on March 14, 1979. Although these notices were received, the plaintiffs did not exercise the option to rescind but instead sued to reform the contracts between the parties and to recover what the plaintiffs contend were the excessive payments they made to Barnaby's pursuant to the contracts.

28. By the time Barnaby's extended the offer of rescission to the plaintiffs, the plaintiffs had stopped making some or all of the payments under their contracts. For this reason Barnaby's counterclaimed, among other things, for damages based on the unpaid payments and for injunctive relief terminating the franchisees. As of September 30, 1980, the plaintiff corporations have failed to make the below–listed total payments due Barnaby's:

(a) SDL of Waunakee, Inc.          $ 70,621.49
(b) Kent's Family Inn, Inc.        $112,003.85
(c) Port Washington Road, Inc.     $116,581.49
(d) Harry's of 27th Street, Inc.   $144,120.40
(e) Chamberlain's Inn, Inc.        $ 51,026.82
(f) Chump on Capitol Drive, Inc.   $101,259.89

29. On November 23, 1979, Barnaby's attorney mailed a certified letter to each plaintiff, which letter stated that unless the overdue payments under the parties' contracts were made within a specified time, the leases and franchises would be terminated. Although each of the plaintiffs received the notice, none of the plaintiffs made the past due payments. Thereafter Barnaby's counterclaimed for these payments and for declaratory and injunctive relief against the plaintiffs' continued use of the real estate and equipment and Barnaby's trademarks and business methods.

30. The parties contracts, summarized in paragraphs numbered 20 through 25 above, reflect accurately the parties' various agreements relating to the sale, lease, and franchise of Barnaby's six Wisconsin restaurants.

31. On May 1, 1977, the fair market value of each of the six franchised restaurant businesses equalled or exceeded the price paid by each plaintiff corporation for each such business.

32. The plaintiffs have failed to make the payments required of them under the parties' contracts, but the plaintiff corporations have continued, over Barnaby's objections, to operate under Barnaby's trade and service marks, to use Barnaby's business methods, and to use the real estate and equipment leased to the plaintiff corporations by Barnaby's.

## CONCLUSIONS OF LAW

■ 1. Before this action went to trial, this Court granted the plaintiffs' request that their claims for relief be tried to a jury to allow for the possibility that those claims would be based on the same set of facts as the defendants' counterclaims for damages. Upon the conclusion of the plaintiffs' case in chief, this Court granted the defendants' motion to take the plaintiffs' claims from the jury for two reasons. First, there was no question that the plaintiffs' claims were equitable in nature. For their relief, each of the plaintiffs asked that the various contracts be reformed and rewritten. Rather than standing on the contracts as written and asking either for the benefit of their bargain and for defensive relief to defeat the counterclaim brought to enforce the contracts or for rescission, the plaintiffs sought to renegotiate the agreements which they had entered into. See 3 Pomeroy, Equity Jurisprudence § 872, at 419–420 (1941). Second, it became apparent that there was no question of fact as to the amount of the defendants' damages under the contracts sued on in the counterclaims. The contracts accurately reflected the various agreements relating to the sale, lease, and franchise of the six restaurants, and this was not disputed.

■ 2. The plaintiffs failed to establish the three elements of fraudulent misrepresentation in Wisconsin. In *Federal Deposit Insurance Corporation v. Lauterbach*, No. 79–2286 (7th Cir., July 17, 1980), the three elements of fraudulent misrepresentation were stated as (1) there must be a false representation, (2) the false representation must be made with intent to defraud and for the purpose of inducing another to act upon it; and (3) such other person must rely on it and be induced to act, to his injury or damage. Prior to entering into these contracts, Barnaby's did not make any written or oral communication to any plaintiff which included an untrue statement of material fact or omitted to state any material fact in order to make the statement not misleading. Nor was there evidence that Barnaby's was aware of present facts incompatible with the proforma's prediction. According to the expert witnesses for both sides, John P. Friberg and Gordon G. Volz, the proformas given to each male plaintiff were not prepared using unreasonable methods and did not contain unreasonable estimates of the future operations of the individual restaurants.

I find that there was no fraud, misrepresentation, or deceit on the part of the defendants in the execution or in the induce-

ment of the contracts involved, and I further find that there was no reliance on the proformas involved. There was reliance on the statements made by Mr. Pope, and the plaintiffs entered into these contracts rather than lose their employment.

■ 3. Barnaby's failure to register the offer of the franchises under the Wisconsin Franchise Investment Law ("Franchise Law") as required by § 553.21(1), Wis.Stats., affords only an action for rescission, and does not add any additional rights over what they have under the law of equity. Barnaby's extended to each of the plaintiffs an offer to rescind the franchise offer and to return the original purchase price of the franchise plus any amount subsequently paid for any goods or services from Barnaby's less the wholesale value of any goods not returned to Barnaby's. This offer was rejected by each of the plaintiffs upon the advice of counsel.

### ORDER

IT IS ORDERED that:

A. *In Civil Action No. 79–C–308*

1. The claim of the plaintiffs is dismissed on its merits and judgment is to be entered that the plaintiffs recover nothing on their claim.

2. Judgment is to be entered in favor of Barnaby's Family Inns, Inc., 2832 West Touhy Avenue, Chicago, Illinois, a restaurant franchisor—

(a) Declaring that the right of SDL of Waunakee, Inc., to operate as a franchisee of Barnaby's Family Inns, Inc., pursuant to a franchise agreement which was marked Exhibit 2 in this action is hereby terminated.

(b) Enjoining SDL of Waunakee, Inc., its principals, agents, and employees, to forthwith discontinue the use of all "Barnaby's" trade names, trademarks, and service marks.

(c) Enjoining SDL of Waunakee, Inc., its principals, agents, and employees, to surrender forthwith to Barnaby's Family Inns, Inc., the original of the Barnaby's "Operations Manual" together with all copies of any and all parts of the "Operations Manual."

(d) Declaring that the right of SDL of Waunakee to occupy a certain building and premises located at 4802 East Washington Avenue, Madison, Wisconsin, pursuant to an indenture of lease which was marked as Exhibit 4 in this action is hereby terminated.

(e) Enjoining SDL of Waunakee, Inc., its principals, agents, and employees to surrender forthwith to Barnaby's Family Inns, Inc., or its designee, occupancy of the building and premises located at 4802 East Washington Avenue, Madison, Wisconsin.

(f) Declaring that the right of SDL of Waunakee, Inc., to use certain equipment pursuant to an equipment lease which was marked Exhibit 3 in this action is hereby terminated.

(g) Enjoining SDL of Waunakee, Inc., its principals, agents, and employees, to surrender forthwith to Barnaby's Family Inns, Inc., possession of all equipment leased to SDL of Waunakee, Inc., pursuant to the equipment lease which was marked as Exhibit 3 in this action.

(h) For $70,621.49 plus the costs of this action, jointly and severally, against SDL of Waunakee, Inc., 4802 East Washington Avenue, Madison, Wisconsin; C. D. Lulling, Route 2, Waunakee, Wisconsin; and Susan Lulling, Route 2, Waunakee, Wisconsin, all of whom are in the restaurant business.

B. *In Civil Action No. 79–C–309*

1. The claim of the plaintiffs is dismissed on its merits, and judgment is to be entered that the plaintiffs recover nothing on their claim.

2. Judgment is to be entered in favor of Barnaby's Family Inns, Inc., 2832 West Touhy Avenue, Chicago, Illinois, a restaurant franchisor—

(a) Declaring that the right of Kent's Family Inn, Inc., to operate as a franchisee of Barnaby's Family Inns, Inc., pursuant to a franchise agreement which was marked Exhibit 28 in this action is hereby terminated.

(b) Enjoining Kent's Family Inn, Inc., its principals, agents, and employees, to forthwith discontinue the use of all "Barnaby's" trade names, trademarks, and service marks.

(c) Enjoining Kent's Family Inn, Inc., its principals, agents, and employees, to surrender forthwith to Barnaby's Family Inns, Inc., the original of the Barnaby's "Operations Manual," together with all copies of any and all parts of the "Operations Manual."

(d) Declaring that the right of Kent's Family Inn, Inc., to occupy a certain building and premises located at 7259 North 76th Street, Milwaukee, Wisconsin, pursuant to an indenture of lease which was marked as Exhibit 30 in this action is hereby terminated.

(e) Enjoining Kent's Family Inn, Inc., its principals, agents, and employees to surrender forthwith to Barnaby's Family Inns, Inc., occupancy of the building and premises located at 7259 North 76th Street, Milwaukee, Wisconsin.

(f) Declaring that the right of Kent's Family Inn, Inc., to use certain equipment pursuant to an equipment lease which was marked Exhibit 29 in this action is hereby terminated.

(g) Enjoining Kent's Family Inn, Inc., its principals, agents, and employees to surrender forthwith to Barnaby's Family Inns, Inc., possession of all equipment leased to Kent's Family Inn, Inc., pursuant to the equipment lease which is marked as Exhibit 29 in this action.

(h) For $112,003.85 plus the costs of this action, jointly and severally, against Kent's Family Inn, Inc., 7259 North 76th Street, Milwaukee, Wisconsin; Kent V. Mieding, 552 West Fransee Lane, Glendale, Wisconsin; and Judith Mieding, 552 West Fransee Lane, Glendale, Wisconsin, all of whom are in the restaurant business.

C. *In Civil Action No. 79–C–310*

1. The claim of the plaintiffs is dismissed on its merits, and judgment is to be entered that the plaintiffs recover nothing on their claim.

2. Judgment is to be entered in favor of Barnaby's Family Inns, Inc., 2832 West Touhy Avenue, Chicago, Illinois, a restaurant franchisor—

(a) Declaring that the right of Port Washington Road, Inc., to operate as a franchisee of Barnaby's Family Inns, Inc., pursuant to a franchise agreement which was marked Exhibit 61 in this action is hereby terminated.

(b) Enjoining Port Washington Road, Inc., its principals, agents, and employees, to forthwith discontinue the use of all "Barnaby's" trade names, trademarks, and service marks.

(c) Enjoining Port Washington Road, Inc., its principals, agents, and employees to surrender forthwith to Barnaby's Family Inns, Inc., the original of the Barnaby's "Operations Manual" together with all copies of any and all parts of the "Operations Manual."

(d) Declaring that the right of Port Washington Road, Inc., to occupy a certain building and premises located at 5201 North Port Washington Road, Glendale, Wisconsin, pursuant to an indenture of lease which was marked as Exhibit 63 in this action is hereby terminated.

(e) Enjoining Port Washington Road, Inc., its principals, agents, and employees to surrender forthwith to ·Barnaby's Family Inns, Inc., occupancy of the building and premises located at 5201 North Port Washington Road, Glendale, Wisconsin.

(f) Declaring that the right of Port Washington Road, Inc., to use certain equipment pursuant to an equipment lease which was marked Exhibit 62 in this action is hereby terminated.

(g) Enjoining Port Washington Road, Inc., its principals, agents, and employees to surrender forthwith to Barnaby's Family Inns, Inc., possession of all equipment leased to Port Washington Road, Inc., pursuant to the equipment lease which is marked as Exhibit 62 in this action.

(h) For $116,581.49 plus the costs of this action, jointly and severally, against Port Washington Road, Inc., 5201 North Port Washington Road, Glendale, Wisconsin; Thomas G. Meyer, 2512 Margadetta Court, Glendale, Wisconsin; and Sue A. Meyer, 2512 Margadetta Court, Glendale, Wiscon-

sin, all of whom are in the restaurant business.

D. *In Civil Action No. 79–C–311*

1. The claim of the plaintiffs is dismissed on its merits, and judgment is to be entered that the plaintiffs recover nothing on their claim.

2. Judgment is to be entered in favor of Barnaby's Family Inns, Inc., 2832 West Touhy Avenue, Chicago, Illinois, a restaurant franchisor—

(a) Declaring that the right of Harry's of 27th Street, Inc., to operate as a franchisee of Barnaby's Family Inns, Inc., pursuant to a franchise agreement which was marked Exhibit 91 in this action is hereby terminated.

(b) Enjoining Harry's of 27th Street, Inc., its principals, agents, and employees, to forthwith discontinue the use of all "Barnaby's" trade names, trademarks, and service marks.

(c) Enjoining Harry's of 27th Street, Inc., its principals, agents, and employees, to surrender forthwith to Barnaby's Family Inns, Inc., the original of the Barnaby's "Operations Manual" together with all copies of any and all parts of the "Operations Manual."

(d) Declaring that the right of Harry's of 27th Street, Inc., to occupy a certain building and premises located at 4854 South 27th Street, Milwaukee, Wisconsin, pursuant to an indenture of lease which was marked as Exhibit 93 in this action is hereby terminated.

(e) Enjoining Harry's of 27th Street, Inc., its principals, agents, and employees to surrender forthwith to Barnaby's Family Inns, Inc., occupancy of the building and premises located at 4854 South 27th Street, Milwaukee, Wisconsin.

(f) Declaring that the right of Harry's of 27th Street, Inc., to use certain equipment pursuant to an equipment lease which was marked Exhibit 92 in this action is hereby terminated.

(g) Enjoining Harry's of 27th Street, Inc., its principals, agents, and employees, to surrender forthwith to Barnaby's Family Inns, Inc., possession of all equipment leased to Harry's of 27th Street, Inc., pursuant to the equipment lease which is marked as Exhibit 92 in this action.

(h) For $144,120.40 plus the costs of this action, jointly and severally, against Harry's of 27th Street, Inc., 4854 South 27th Street, Milwaukee, Wisconsin; Harry C. Nickell, 485 East Oak View Lane, South Milwaukee, Wisconsin; and Dianna L. Nickell, 485 East Oak View Lane, South Milwaukee, Wisconsin, all of whom are in the restaurant business.

E. *In Civil Action No. 79–C–312*

1. The claim of the plaintiffs is dismissed on its merits, and judgment is to be entered that the plaintiffs recover nothing on their claim.

2. Judgment is to be entered in favor of Barnaby's Family Inns, Inc., 2832 West Touhy Avenue, Chicago, Illinois, a restaurant franchisor—

(a) Declaring that the right of Chamberlain's Inn, Inc., to operate as a franchisee of Barnaby's Family Inns, Inc., pursuant to a franchise agreement which was marked Exhibit 122 in this action is hereby terminated.

(b) Enjoining Chamberlain's Inn, Inc., its principals, agents, and employees, to forthwith discontinue the use of all "Barnaby's" trade names, trademarks, and service marks.

(c) Enjoining Chamberlain's Inn, Inc., its principals, agents, and employees, to surrender forthwith to Barnaby's Family Inns, Inc., the original of the Barnaby's "Operations Manual" together with all copies of any and all parts of the "Operations Manual."

(d) Declaring that the right of Chamberlain's Inn, Inc., to occupy a certain building and premises located at 6613 West Mineral Point Road, Madison, Wisconsin, pursuant to an indenture of lease which was marked as Exhibit 124 in this action is hereby terminated.

(e) Enjoining Chamberlain's Inn, Inc., its principals, agents, and employees to surrender forthwith to Barnaby's Family Inns, Inc., or its designee, occupancy of the build-

ing and premises located at 6613 West Mineral Point, Madison, Wisconsin.

(f) Declaring that the right of Chamberlain's Inn, Inc., to use certain equipment pursuant to an equipment lease which was marked Exhibit 123 in this action is hereby terminated.

(g) Enjoining Chamberlain's Inn, Inc., its principals, agents, and employees, to surrender forthwith to Barnaby's Family Inns, Inc., or its designee, possession of all equipment leased to Chamberlain's Inn, Inc., pursuant to the equipment lease which is marked as Exhibit 123 in this action.

(h) For $51,026.82 plus the costs of this action, jointly and severally, against Chamberlain's Inn, Inc., 6613 West Mineral Point Road, Madison, Wisconsin; Christine M. Chamberlain, 2702 Badger Lane, Madison, Wisconsin; and Michael Jo Chamberlain, 2702 Badger Lane, Madison, Wisconsin, all of whom are in the restaurant business.

F. *In Civil Action No. 79–C–313*

1. The claim of the plaintiffs is dismissed on its merits, and judgment is to be entered that the plaintiffs recover nothing on their claim.

2. Judgment is to be entered in favor of Barnaby's Family Inns, Inc., 2832 West Touhy Avenue, Chicago, Illinois, a restaurant franchisor—

(a) Declaring that the right of Chump on Capitol Drive, Inc., to operate as a franchisee of Barnaby's Family Inns, Inc., pursuant to a franchise agreement which was marked Exhibit 149 in this action is hereby terminated.

(g) Enjoining Chump on Capitol Drive, Inc., its principals, agents, and employees, to forthwith discontinue the use of all "Barnaby's" trade names, trademarks, and service marks.

(c) Enjoining Chump of Capitol Drive, Inc., its principals, agents, and employees, to surrender forthwith to Barnaby's Family Inns, Inc., the original of the Barnaby's "Operations Manual" together with all copies of any and all parts of the "Operations Manual."

(d) Declaring that the right of Chump on Capitol Drive, Inc., to occupy a certain building and premises located at 8501 West Capitol Drive, Milwaukee, Wisconsin, pursuant to an indenture of lease which was marked as Exhibit 151 in this action is hereby terminated.

(e) Enjoining Chump on Capitol Drive, Inc., its principals, agents, and employees, to surrender forthwith to Barnaby's Family Inns, Inc., occupancy of the building and premises located at 8501 West Capitol Drive, Milwaukee, Wisconsin.

(f) Declaring that the right of Chump on Capitol Drive, Inc., to use certain equipment pursuant to an equipment lease which was marked Exhibit 150 in this action is hereby terminated.

(g) Enjoining Chump on Capitol Drive, Inc., its principals, agents, and employees, to surrender forthwith to Barnaby's Family Inns, Inc., possession of all equipment leased to Chump on Capitol Drive, Inc., pursuant to the equipment lease which is marked as Exhibit 150 in this action.

(h) For $101,259.89 plus the costs of this action, jointly and severally, against Chump on Capitol Drive, Inc., 8501 West Capitol Drive, Milwaukee, Wisconsin; Gene M. McKiernan, 8873 West Potomac Avenue, Milwaukee, Wisconsin; and Valerie J. McKiernan, 8873 West Potomac Avenue, Milwaukee, Wisconsin, all of whom are in the restaurant business.

\* \* \*

Pursuant to the May 30, 1980, decision and order of Magistrate Aaron E. Goodstein, Jack D. Moertl was appointed as trustee to funds representing moneys withheld from Barnaby's Family Inns, Inc., by Harry's on 27th Street, Inc.; SDL of Waunakee, Inc.; and Chamberlain's Inn, Inc.

IT IS FURTHER ORDERED that:

1. Jack D. Moertl, as trustee of the escrowed funds, forthwith turn over the foregoing escrowed funds to Irvin B. Charne and Howard A. Pollack as attorneys for Barnaby's Family Inns, Inc.

2. Jack D. Moertl, as trustee of the escrowed funds, within seven days of the filing date of this document, serve on op-

posing counsel and file with the court an accounting for such funds.

3. Barnaby's Family Inns, Inc., within fourteen days of the filing date of this document partially satisfy its judgment to the extent of any escrowed funds it receives pursuant to this order.